Doefee, Judge,
delivered tbe opinion, of the court:
This case is before us on stipulated facts.
Plaintiff is a motor vehicle common carrier. Between July 1955 and December 1958 plaintiff transported some 22 shipments of property for defendant. For each such shipment, plaintiff assessed and was paid charges for “exclusive use of vehicle” determined from the applicable tariffs then in effect. The General Accounting Office disallowed a portion of the charges for each shipment, deducting the disallowed charges from payments due plaintiff on other transportation services. Plaintiff now seeks to recover these disallowed charges.
The 22 shipments have been classified in four separate categories. Defendant now concedes that plaintiff is entitled to recover $6,088.10 on the shipments listed in Category I (findings 1 through 8) under our decision in Campbell “66” Express, Inc. v. United States, 157 Ct. Cl. 365; 302 F. 2d 270 (1962).
Defendant has also conceded plaintiff’s right to recover $5,159.01 on the shipments listed in Category IV (findings 24 through 26). Accordingly, the only contest awaiting determination is plaintiff’s right to recover “exclusive use” rates on the shipments listed in Categories II and III.
Category II consists of four shipments of electric copper, lead-covered reels of cable moving from Monticello, Illinois to Edwards Air Force Base in California. The reels were loaded on flatbed trailers in single rows, five reels to a load. The loading pattern used by the shipper did not permit any more than five reels per vehicle, though space for other material was available on either side of the row of reels.
The bills of lading were noted “exclusive use of Vehicle Authorized.” The bills of lading were receipted at destination by a Government agent who executed a consignee’s certificate which read as follows:
I certify that I have this day received from the transportation company named in this certificate the public property described in this Bill of Lading in apparent good order and condition except as noted on the reverse hereof, and that delivery service at destination was not by the Government or its agents.
*268 No exceptions were noted. Tbe tariff applicable to the shipments, 4th Revised page 105 of Rocky Mountain Motor Tariff Bureau Tariff No. 20A, Item No. 935, provided in pertinent part:

Charge for Exclusive Use of Vehicle.

Subject to Notes 1, 2, 3,4, 5 and 6, and except as otherwise provided in Item 940 herein or in individual items in tariffs made subject to this tariff, when a shipper or his lawful agent requests the exclusive use of a vehicle, charges will be assessed on the actual weight or authorized minimum weight whichever is higher, at the rate applicable, subject to a minimum charge computed on a weight of 20,000 pounds at the First Class LTL rate as provided in Sections 6 thru 11 of RMT No. 21 for each vehicle used. In the application of the provisions just stated the First Class volume rates shown on pages 281 thru 292 or on page 296 of RMT 21 will not be used in the determination of charges provided for in this item.
Nora 1: — The term “vehicle” means, for the purpose of this rule, a truck, or a semi-trailer.
Nora 2: — Shipper shall endorse on bill of lading:
“Exclusive use of vehicle requested.”
Category III consists of three shipments of internal combustion engines from Indianapolis, Indiana to McChord Air Force hi the State of Washington. Each shipment was made up of two j et engines. While no more than two engines could be loaded per vehicle, there was space available for loading freight of other types. The bills of lading bear the endorsement “Exclusive use of Vehicle.” Though these shipments were to have moved under seal, the seals were deleted on the authority of the Transportation Officer at Indianapolis to permit reloading in St. Louis, Missouri.
These shipments, too, were receipted for at destination by a Government transportation agent who signed a consignee’s certificate identical to the one set out, sufra. Again, no exceptions were noted.
The tariff applicable to these Category III shipments was the “First Revised page 129 of Rocky Mountain Tariff No. 20-B which provided in pertinent part:

Seals or Lochs Afflied to Vehicles

Except as provided in Note 1 below, all seals or locks applied to vehicles may be removed at the option of the *269 carrier over whose line such vehicle is moving, for the purpose of adding freight, transfer of freight or for other purposes contributing to better utilization of the vehicle.
Note 1: — The provisions of this rule will not apply on shipments for which exclusive use of vehicle is requested as provided in Items 935 or 940 herein, or in individual items in tariffs made subject to this tariff.

Charge for Exclusive Use of Vehicle

Subject to Notes 1,2, 8,4,5 and 6, and except as otherwise provided in Item 940 herein or in individual items in tariffs made subject to this tariff, when a shipper or his lawful agent requests the exclusive use of a vehicle, the charge for each such vehicle will be the charge for the actual weight, or the authorized minimum weight, whichever is greater at the rates applicable, subject to a minimum charge computed on a weight of 22,000 pounds at the Class 100 rate as provided in Sections 6 thru 12 of RMT 21-A.
Note 1: — The term “Vehicle” means, for the purpose of this rule, a truck, or a semi-trailer.
Note 2: — Shipper shall endorse on bill of lading:
“EXCLUSIVE USE OF VEHICLE REQUESTED.”
* * * *
Note 5: — Transfer of loads, enroute, because of road condition, embargoes, equipment failure, or for other causes, shall not modify, alter, or void the endorsement on the bill of lading, “Exclusive use of Vehicle Requested.’
It is plaintiff’s position in regard to both Category II and Category III shipments that when exclusive use of a vehicle is requested by a shipper, the bill of lading is properly endorsed to that effect, and a shipment is accepted by the consignee at destination without exception or qualification, the applicable charges are those for “exclusive use of vehicle” as provided in the governing tariff. Defendant, on the other hand, takes the position that the bill of lading and payment record do not constitute evidence sufficient to satisfy the carrier’s burden of proving that “exclusive use of vehicle” *270 was actually furnished, or that no other freight was loaded on the vehicles for the carrier’s convenience.
In regard to the Category III shipments, defendant further argues that the exclusive use of vehicle charges are not applicable since the shipments were transferred enroute. We need not consider this argument, due to our disposition of the case.
It has long been settled that claimants against the United States must come forward with evidence establishing their claim. Proof of the correctness of carrier charges must be “as full and satisfactory as that required for the establishment of any other contract to hold the Government liable.” Southern Pacific Co. v. United States, 60 Ct. Cl. 662, 671 (1925); aff'd 272 U.S. 445 (1926). The fact that the carrier initially received full payment on its claim does not alter the Government’s right to require a full showing that the claimant is entitled to recover. Grand Trunk Western Ry. Co. v. United States, 252 U.S. 112 (1920). Pías plaintiff here adequately discharged this burden ?
Plaintiff contends that the bills of lading, with the notation “Exclusive use of Vehicle Authorized” receipted with the execution of the consignee’s certificate without qualification or exception by defendant’s agent, are sufficient to establish a prima facie claim.
To support its position, plaintiff points out the general rule that a prima facie showing of delivery in good condition is made through a bill of lading executed by the carrier, containing a recital to that effect. Nelson v. Woodruff, 1 Black, 156, 160 (1861). But while we recognize the correctness of this rule, we do not think it applicable to the present case. The condition of the goods on delivery is not here involved. Certainly, execution of the consignee’s certificate by defendant’s agent to the effect that the goods were in good order would be sufficient to establish a prima facie case, were that the issue. But our problem is whether plaintiff has proved that the services contracted for were actually performed. It is undisputed that defendant’s agents who did execute the consignee’s certificates could not know, from the face of the bill of lading, or from examination of the *271 cargo, whether plaintiff had indeed provided “exclusive use of vehicle.” In offering the noted bills of lading, plaintiff is in the position of attempting to prove performance of a contract solely by offering the contract itself. This is insufficient.
Since plaintiff failed to prove that the services contracted for were actually performed, its claim for “exclusive use” charges on Category II and Category III shipments must be dismissed.
Accordingly, and upon the stipulated findings of fact which we hereby adopt as the findings of the court, we conclude that plaintiff is entitled to recover $6,088.10 on its Category I shipments, and $5,159.01 on its Category IV shipments, less the amount of $656.37 due defendant on the Category II shipments, pursuant to the stipulation of the parties. With respect to the remaining claims, plaintiff’s petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the stipulation of the parties, and the brief and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a Nevada Corporation engaged in business as a common carrier of property by motor vehicle in interstate commerce pursuant to authority issued to it by the Interstate Commerce Commission.
2. Between July 1955 and December 1958, plaintiff transported in interstate commerce some twenty-two (22) shipments of property for and at the request of defendant.
3. Plaintiff’s bills for transportation charges for each of the twenty-two (22) shipments were paid by defendant. Thereafter, a portion of each bill was disallowed by the General Accounting Office, an agency of defendant, and upon refusal of plaintiff to refund such amounts they were deducted by defendant from payments due plaintiff for other transportation services.
4. To identify and decide the issues in suit the twenty-two (22) shipments may be divided into four categories.
*272 CAT3SG0RX I
Items 1 through 6,12, 20 and 21 as Shown on Plaintiffs Schedule and Defendant’s Summary Sheet (Plaintiff’s Bills Nos. 24941, 26188, 27865, 30938, 33861, 35211, and 36478)
5. The shipments involved were constituted and moved as follows:
(a) Items 1 and 2
Each shipment consisted of one tank 26' long, 5' wide, and 6' high, occupying 720 cubic feet. Each movement originated at McClellan Air Force Base,_ California, on July 8, 1955, and was delivered in Wichita, Kansas, on July 11, 1955. The Government bill of lading for each shipment (AF-4775321 and AF-4775322) bears the notation:
“EXCLUSIVE USE 0E CARRIERS EQUIPMENT AS ORDERED AND EURNISHED.”
“THIS SHIPMENT MUST BE DELIVERED NO LATER THAN NOON TUESDAY 12 JULY 1965.”
“EXPEDITE-HIGH PRIORITY EREIGHt”
HI SPEED PII SPEED
The first shipment was transported in plaintiff’s van trailer No. 4334 which has inside dimensions of 8'5" x 7'8y2" x 39/4%//, and a capacity of 2527 cubic feet while the second shipment was transported in plaintiff’s van trailer No. 1302 having inside dimensions of 8' 6%" x T8" x 34'9i4" and a capacity of 2261 cubic feet.
(b) ItemS
The shipment originated at Sioux City, Iowa, on February 2,1956, and was delivered at McClellan Air Force Base, California, on February 6, 1956. The shipment consisted of 11 crates of reflectors, each crate having dimensions of 8'6" x 6'5" x 1'2", and the shipment weigh 5,225 pounds. The Government bill of lading, AF-4397451, bears the notation “Nature of material requires exclusive use of trailer.” The shipment was transported in a van trailer belonging to Union Freightways (subsequently acquired by defendant) which had inside dimensions of 8' x 7'6" x 34' and a capacity of 2040 cubic feet.
*273 (c) Iteml¡.
Tbe shipment originated at Oakland, California, on July 13, 1956, and was delivered in Eobinson, Missouri, on July 18, 1956. It consisted of 30 boxes having dimensions of 4' x 3'2" x 3'7" and the shipment weighed 13140 pounds. The Government bill of lading, N-32028205, bears the notation: “Exclusive use of vehicle authorized by E.O. #12N-0764974.” The shipment was transported m plaintiff’s van trailer No. V-1313 which has inside dimension of 8'6%" x 7'8" x 34'9%" and a capacity of 2261 cubic feet.
(d) ItemsSamdO
Both shipments originated at Ontario, California, on March 5,1957, and were delivered at McChord Air Force Base, Washington, on March 8, 1957. Each shipment consisted of two aircraft engines and weighed 18,000 pounds. Each engine as packed measured 15' x 8' x 10', and had a displacement of 2400 cubic feet. The Government bills of lading for each shipment (AF-6702645 and AF-6702644) bears the notation “Exclusive Use of vehicle requested by the Government.” Both shipments moved on flatbed trailers belonging to plaintiff which were 35' long. The contractor states that “Since these shipments were of the highest priority and had to meet a deadline date at destination, the carrier was precluded from loading any other freight on the vehicle.”
(e) Item IB
This shipment originated in Midwest City, Oklahoma, on November 7, 1957, and was delivered at St. Joseph, Missouri, on November 8,1957. It consisted of aircraft engines and weighed 13040 pounds. The Government bill of lading, AF-7669593, bears the notation “Exclusive use of vehicle requested by the Government.” The shipment was transported in two van trailers belonging to Chief Freight Lines, one of which had a capacity of 1800 cubic feet while the other had a capacity of 1856 cubic feet.
(f) Item B0
The shipment originated at Warner Eobins Air Force Base, Georgia, on February 13,1958, and was delivered at Norton Air Force Base, California, on February 19, 1958. The shipment consisted of four pieces of machinery weighing 15212 pounds. The Government bill of lading, AF-7893636, bears the notation “Exclusive use of vehicle requested by the Government.”
*274 (g) Item 21
The shipment originated at Winston-Salem, North Carolina, on May 6, 1958, and was delivered at Clear-field, Utah, on May 12, 1958. The shipment consisted of radio transmitter and receiving sets and electrical appliances and weighed 17,804 pounds. The van trailer used to transport the shipment was visibly full. The Government bill of lading, N-33544516, bears the notation “Exclusive use of vehicle requested by shipper and authorized under DR XX 725N2.”
6. At the times that each of these shipments moved there were in effect lawful tariffs which provided for the assessment of exclusive use charges, when a shipper or his lawful agent requests the exclusive use of a vehicle, and when the bill of lading carries an endorsement to that effect. Each of the Government bills of lading covering these shipments is properly endorsed and exclusive use service was performed by the carrier.
7. It is the plaintiff’s position with respect to these shipments that whether or not the transporting vehicles were loaded to capacity the applicable charges are the exclusive use charges set forth in the governing tariffs. It is further plaintiff’s position that, with the exception of Item 21, the vehicles were not loaded to capacity in that there could have been loaded in or on each such vehicle additional freight belonging to either the defendant or another shipper if exclusive use of vehicle had not been requested by defendant. It is defendant’s position that since the vehicles were loaded to capacity in that an additional unit of the same commodity in the shipping form tendered could not be loaded thereon that exclusive use of vehicle rates are not applicable, and accordingly the applicable rates are the truckload rates at the truckload minimum weight.
8. With respect to this category it is agreed that if plaintiff be correct it is due the sum of $6,088.10, if the defendant be correct the plaintiff is due the sum of $123.40.
CATEGORY It
Item Nos. 7,8,9 and 10 as Shown on Plaintiff’s Schedule and Defendant’s Summary Sheet (Plaintiff’s Bills Nos. 30968, 31009 and 31119)
*275 9. These items cover four shipments of five reels each of cable, electric cooper, lead covered, moving from Monticello, Illinois, to Edwards Air Force Base, California, under Government bills of lading AF-6946703, AF-6946705, AF-6946704, and AF-6946701, during March 1957.
10. The reels were either 68% inches in diameter by 42 inches in width; 74% inches in diameter by 45% inches in width; or 80% inches in diameter by 43 inches in width. The reels were loaded in a single row, five each down the middle of open flatbed trailers furnished by plaintiff. Each shipment weighed approximately 32,000 pounds.
11. The loading pattern followed by the shipper would not permit a greater number of reels to be loaded on each vehicle, although space was available on each side of the row of reels for the loading of other material by the carrier. The Government bills of lading do not indicate that the shipments were sealed.
12. The bills of lading have the notation “Exclusive use of Vehicle Authorized.” The bills of lading were receipted for at destination by a Government agent who executed the following consignee’s certificate of delivery:
“I certify that I have this day received from the transportation company named in this certificate the public property described in this Bill of Lading in apparent-good order and condition except as noted on the reverse hereof, and that delivery service at destination was not by the Government or its agents.
No exceptions were noted on the reverse of the bills of lading.
13. At the time these shipments moved, 4th Bevised page 105 of Bochy Mountain Motor Tariff Bureau Tariff No. 20A was in effect and plaintiff was a party to said tariff. Item No. 935 provided in pertinent part:

Charge for Exclusive Use of Vehicle.

Subject to Notes 1,2,3,4, 5 and 6, and except as otherwise provided in Item 940 herein or in individual items in tariffs made subject to this tariff, when a shipper or his lawful agent requests the exclusive use of a vehicle, charges will be assessed on the actual weight or authorized minimum weight whichever is higher, at the rate applicable, subject to a minimum charge computed on a *276 weight of 20,000 pounds at the First Class LTL rate as provided in Sections 6 thru 11 of RMT No. 21 for each vehicle used. In the application of the provisions just stated the First Class volume rates shown on pages 281 thru 292 or on page 296 of RMT 21 will not 'be used in the determination of charges provided for in this item.
Nora 1: — The term “vehicle” means, for the purpose of this rule, a truck, or a semitrailer.
Nora 2: — Shipper shall endorse on bill of lading:
“Exclusive use of vehicle requested.”
14 It is plaintiff’s position that when exclusive use of !si vehicle is requested by a shipper, the bill of lading is properly endorsed to that effect, and a shipment is accepted by consignee at destination without exception or qualification, the applicable charges are those for exclusive use of vehicle as provided in the governing tariff. It is defendant’s position with respect to these shipments that the bill of lading and payment record does not constitute evidence sufficient to satisfy the carrier’s burden of proof that exclusive use of vehicle service was actually furnished the involved shipments and that no other freight was loaded on the vehicles for the carrier’s convenience.
15. With respect to these items it is agreed that if plaintiff be correct it is due the sum of $3,564.52 and if defendant is correct defendant is due the sum of $656.37.
CATEGORY III
Item Nos. 17,18 and 19 as Shown on Plaintiff’s Schedule and on Defendant’s Summary Sheet (Plaintiff’s Bill 65-001)
16. These items covered three shipments of internal combustion engines, each shipment weighing 9000 pounds and moving from Indianapolis, Indiana, to McChord Air Force Base, Washington, on Government bills of lading AF-9180508, AF-9180509 and AF-9180511, during September 1958.
17. Each shipment consisted of two jet engines in cans measuring 136" long x 57" wide x 61" high. The two engines on each vehicle had a displacement of 512 cubic feet *277 and the dimensions were such that no more than two engines in the shipping form tendered could be loaded on the vehicle. There was space available for the loading of other freight of different types.
18. The bills of lading bear the endorsement “Exclusive use of vehicle,” which endorsement was placed thereon by the defendant. The routing on the bills of lading called for a three-line haul consisting of Marion Trucking Company, Lovelace Company, and Pacific Intermountain Express, plaintiff herein.
19. The bills of lading indicate that the shipments were to have moved under seal, but that the seals were deleted on the authority of the transportation officer at Indianapolis, Indiana, to permit the shipments to be reloaded at St. Louis, Missouri, from the vehicles in which they were transported to St. Louis to vehicles belonging to plaintiff on which the shipments were transported to destination. The transfer of the lading at St. Louis was not performed at the request of the Government.
20. The shipments were receipted for at destination by a Government transportation agent who signed the following consignee’s certificate of delivery:
I certify that I have this day received from the transportation company named in this certificate the public property described in this bill of lading in apparent good order and condition, except as noted on the reverse hereof, and that delivery service at destination was not by the government or its agent.
No exceptions were made on the reverse of the bills of landing.
21. First Pevised page 129 of Pocky Mountain Motor Tariff Bureau Tariff No. 20-B to which plaintiff was a party was in effect at the time these shipments moved and provided in pertinent paid, as follows:

/Seals or Lochs Applied to Vehicles

Except as provided in Note 1 below, all seals or locks applied to vehicles may be removed at the option of the carrier over whose line such vehicle is moving, for the purpose of adding freight, transfer of freight or for other purposes contributing to better utilization of the vehicle.
*278 Note 1: — The provisions of this rule will not apply on shipments for which exclusive use of vehicle is requested as provided in Items 985 or 940 herein, or in individual items in tariffs made subject to this tariff.

Charge for Exclusive Use of Vehicle

Subject to Notes 1,2,3,4, 5 and 6, and except as otherwise provided in Item 940 herein or in individual items in tariffs made subject to this tariff, when a shipper or his lawful agent requests the exclusive use of a vehicle, the charge for each such vehicle will be the charge for the actual weight, or the authorized minimum weight, whichever is greater at the rates applicable, subject to a minimum charge computed on a weight of 22,000 pounds at the Class 100 rate as provided in Sections 6 thru 12 of RMT 21-A.
Note 1: — The term “Vehicle” means, for the purpose of this rule, a truck, or a semi-trailer.
Note 2: — Shipper shall endorse on bill of lading:
“EXCLUSIVE USE OF VEHICLE REQUESTED.”
«ií «!• *!»
Note 5: — Transfer of loads en route, because of road conditions, embargoes, equipment failure, or for other causes, shall not modify, alter, or void the endorsement on the bill of lading, “Exclusive use of Vehicle Requested.”
sfs sj: s*: # ❖
22. It is plaintiff’s position that these shipments were transported in accordance with the provisions of the governing tariff making exclusive use charges applicable and therefore that those are the charges which defendant is legally obligated to pay. It is further plaintiff’s position that under the explicit provisions of the governing tariff the reloading of these shipments did not make the exclusive use charges inapplicable. It is the defendant’s position with respect to these shipments that: (1) The bill of lading record is not sufficient proof to justify the application of the exclusive use of vehicle charges; and (2) that exclusive use of a vehicle charges are not applicable because the shipments were transferred en route.
*279 23. With respect to these items it is agreed that if plaintiff be correct it is due the sum of $2,922 and if defendant be correct nothing is due either party.
CATEGORY IV
Item Nos. 11,13,14,15,16 and 22 as Shown on Plaintiff’s Schedule and Defendant’s Summary (Plaintiff’s Bills Nos. 31846, 32488, 32936, M & M 6-24-34, 27739 and 55027)
24. Defendant’s response to plaintiff’s request for admission of facts admitted that plaintiff was due the amount of $1,151.36 on Item 16 (plaintiff’s bill No. 27738) and $1,421 on Item 22 (plaintiff’s bill No. 55027).
25. On the basis of evidence adduced by plaintiff in the form of freight bills, teletype records and other records kept by plaintiff in the usual course of business, defendant now concedes plaintiff is entitled to recover $782 on Item 11 (bill No. 33861); $607.56 on Item 13 (bill No. 32488); $463.25 on Item 14 (bill No. 32936); and $733.84 on Item 15 (bill No. M & M 6-2434).
26. It is therefore agreed that on the items no longer in dispute plaintiff is entitled to recover the sum of $5,159.01.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover the sum of six thousand eighty eight dollars and ten cents ($6,088.10) on its Category I shipments, and five thousand one hundred fifty nine dollars and one cent ($5,159.01) on its Category IV shipments, less the amount of six hundred fifty-six dollars and thirty-seven cents ($656.37) due defendant on the Category II shipments, pursuant to the stipulation of the parties.
It is therefore ordered and adjudged that plaintiff recover of and from the United States the sum of ten thousand five hundred ninety dollars and seventy-four cents ($10,590.74). It is further ordered and adjudged that plaintiff is not entitled to recover as to the remaining claims set forth in the petition and as to these claims the petition is dismissed.